# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

CAERUS GROUP, LLC, )
)
    Plaintiff/Counterclaim )
Defendant, )
)
    v. )  Consolidated
)  C.A. No. 2025-0393-BWD
CHEMICAR EUROPE NV, EMM )
INTERNATIONAL BV, PIET GREEVE, )
DIRK VAN DRIESSCHE, CARL )
GARCIA, and THOMAS VAN DER )
KOOIJ, )
)
    Defendants/Counterclaim )
Plaintiffs, )
)
  and )
)
FINIXA USA, INC., )
)
    Nominal Defendant. )

## MEMORANDUM OPINION GRANTING MOTIONS TO DISMISS

Date Submitted: February 11, 2026
Date Decided: March 10, 2026

Thad J. Bracegirdle and Justin C. Barrett, BAYARD, P.A., Wilmington, DE; *Attorneys for Plaintiff/Counterclaim Defendant Caerus Group, LLC and Defendant Mitch Penney.*

David E. Wilks and D. Charles Vavala, III, WILKS LAW LLC, Wilmington, DE; OF COUNSEL: Jeffrey S. Boxer and Yining Bei, CARTER LEDYARD & MILBURN LLP, New York, NY; *Attorneys for Defendants/Counterclaim Plaintiffs Chemicar Europe NV, EMM International BV, Piet Greeve, Dirk van Driessche, Carl Garcia, and Thomas van der Kooij.*

**DAVID, V.C.**

Caerus Group, LLC ("Caerus") and Chemicar Europe, NV ("Chemicar") are investors in a joint venture, Finixa USA, Inc. ("Finixa USA" or the "Company"), formed to distribute Chemicar-manufactured automotive refinishing products in the United States. Caerus initiated this action, alleging, among other claims, that Chemicar breached numerous provisions in a shareholders agreement governing the parties' relationship. Chemicar responded with a second lawsuit (now consolidated with this one) against Caerus' principal and Finixa USA's Chief Executive Officer, Mitch Penney, alleging claims for breach of fiduciary duty and breach of contract. Chemicar also filed counterclaims against Caerus in this action, alleging claims for breach of the shareholders agreement and aiding and abetting breach of fiduciary duty. Caerus and Penney have moved for partial dismissal of Chemicar's claims and counterclaims. Those motions are granted.

## I. BACKGROUND[1]

### A. Chemicar And Caerus Form Finixa USA In A Joint Venture.

Chemicar is a Belgian corporation that manufactures automotive refinishing products. Compl. ¶ 7. Caerus is a Texas limited liability company. Countercls. ¶ 8; Compl. ¶ 10.

---

[1] The following facts are taken from Chemicar's Counterclaims filed in C.A. No. 2025-0393-BWD (the "Counterclaims"), Chemicar's Verified Complaint filed in C.A. No. 2025-

In April 2021, Chemicar and Caerus formed Finixa USA, a Delaware corporation, as a joint venture to import and distribute Chemicar-manufactured products in the United States. Countercls. ¶¶ 14, 16; Compl. ¶ 8. Chemicar owns 3,000 shares of Finixa USA, representing 60%, and Caerus owns 2,000 shares, representing 40%, of the Company's equity. Countercls. ¶ 14; Compl. ¶ 15. Mitch Penney, the sole or majority member of Caerus, serves both as a director on Finixa USA's board of directors (the "Board") and as its Chief Executive Officer ("CEO"). Compl. ¶ 9.

### B. Chemicar, Caerus, and Finixa USA Enter Into A Shareholders Agreement.

In connection with the parties' joint venture, Caerus, Chemicar, and Finixa USA entered into a Shareholders Agreement by and among Finixa USA, Inc. and the Shareholders of Finixa USA, Inc., dated as of April 27, 2021 (the "Shareholders Agreement").[2] Countercls. ¶ 15; Compl. ¶ 16; Compl., Ex. A [hereinafter Agt.].

---

0821-BWD (the "Complaint"), and the documents incorporated by reference therein. Defs.' Answer to Pl.'s Verified Compl. and Countercls. [hereinafter Countercls.], C.A. No. 2025-0393-BWD Dkt. 7; Verified Compl. [hereinafter Compl.], C.A. No. 2025-0821-BWD Dkt. 1; *see Allen v. Encore Energy P'rs*, 72 A.3d 93, 96 n.2 (Del. 2013) ("A judge may consider documents outside of the pleadings only when: (1) the document is integral to a plaintiff's claim and incorporated in the complaint . . . ." (citing *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996))).

[2] Section 17 states that the Shareholders Agreement "shall be governed by and construed in accordance with the internal laws of the State of Delaware" and that "[t]he parties . . . submit to the exclusive jurisdiction of the courts of the United States located in the State of Delaware." Agt. § 17.

Section 4(A) of the Shareholders Agreement addresses the size and composition of the Board. Agt. § 4(A). Section 4(A)(1) sets the size of the Board at four directors, with two directors to be nominated by Chemicar and two directors to be nominated by Caerus. *Id.* § 4(A)(1); Compl. ¶ 17. Upon formation of the Company, Chemicar nominated Piet Greeve and Dirk van Driessche to the Board, and Caerus nominated Penney and Long Hoang, Penney's brother-in-law. Agt. § 4(A)(1); Compl. ¶¶ 11, 17.

Section 4(C)(1)(a) of the Shareholders Agreement "require[s] the approval of the majority of the Board" to "approv[e] any contract . . . that imposes a financial or other obligation on the part of the Company in excess of $10,000." Agt. § 4(C)(1)(a). Section 4(C)(2) "require[s] the approval of the majority of the Board consisting of at least one (1) Chemicar Director and one (1) Caerus Director" to, among other actions, "mak[e] overall policy decisions with respect to the business and affairs of the Company" or "enter[] into or amend[] any contracts, arrangements or agreements with any Affiliates of any Shareholder." *Id.* §§ 4(C)(2)(b), (o).

Sections 4 and 11 of the Shareholders Agreement grant the parties information rights. Section 4(B)(5) states that "[t]he Shareholders shall cause the Board to require and demand that the Chief Executive Officer provides the Board with detailed monthly reports regarding the operations of the Company within two (2) weeks of the end of the preceding month." *Id.* § 4(B)(5). In addition, Section 11

3

provides that "[e]ach Shareholder shall be entitled to full and complete information with respect to the operation of the Company and all of its books and records including, but not limited to, regular online access to [the Company's customer relationship management, or 'CRM,' database], accounting, finance and reporting materials." *Id.* § 11.

## C.    Penney's Employment Agreement

In connection with the parties' joint venture, Penney entered into an agreement with Finixa USA to govern his employment as the Company's CEO (the "Employment Agreement"). Compl. ¶ 19; Verified Compl., Ex. B [hereinafter Empl. Agt.], C.A. No. 2025-0393-BWD Dkt. 1.

Section 2.1 of the Employment Agreement states that Penney "shall have the duties, responsibilities, and authorities normally associated with such position and such other positions and other duties and responsibilities as are assigned by the Board from time to time, including, without limitation, the roles and responsibilities listed on Appendix A attached to this Agreement." Empl. Agt. § 2.1. Appendix A includes a bulleted list of twelve "Roles and Responsibilities," such as "[p]rovid[ing] detailed monthly reports regarding the operations of the Company to the Board" and "keep[ing] CRM organized and grant[ing] access to the Board and the Company's shareholders." Compl. ¶¶ 31, 34; Empl. Agt., App. A.

4

## D. Chemicar's Allegations

As alleged in the Complaint and the Counterclaims, since the formation of the parties' joint venture, Finixa USA has "underperform[ed]" due to Penney's "gross mismanagement, bad faith, and improper actions." Compl. ¶ 28. Chemicar alleges that Penney improperly "focused on selling Finixa products to a single buying group with a limited customer base of only 20 customers located in a relatively limited geographical base" while "ignor[ing] the thousands of other outlets and distributors in the automotive aftermarket sector." *Id.* ¶ 29. It also alleges that Penney traveled "to Hawaii purportedly in connection with this buying group." *Id.*

Additionally, according to Chemicar, Caerus and Penney have not provided Chemicar with access to Finixa USA's books and records. Countercls. ¶ 25. Chemicar alleges that Penney has "failed to respond to simple information requests" "[d]espite repeated requests by Chemicar-appointed Board members," but does not allege with any specificity who made the requests, when the requests were made, what information was requested, or how, if at all, Penney responded. Compl. ¶ 32. Similarly, Chemicar alleges that "Penney has provided few, if any, [monthly] reports" since February 2025, but other than a general allegation that "Chemicar-appointed Board members" have made "repeated requests," Chemicar does not identify any specific requests, who made them, when, or how Penney responded. Countercls. ¶ 23; Compl. ¶ 32.

Further, Chemicar alleges that Finixa USA has "routinely fail[ed] to pay Chemicar's invoices within the required payment period" for products that the Company purchased from Chemicar. Countercls. ¶¶ 32–34. According to Chemicar, Finixa USA has "prioritized" payments to UYL Color Supply, Inc. ("UYL"), "a supplier in which Penney, Hoang, or their family members had a financial interest." Compl. ¶ 46. Chemicar alleges that Caerus "acquiesced and participated in a policy" of "prioritizing payments" to UYL over Chemicar, Countercls. ¶ 5, but does not allege that Finixa USA has or had insufficient funds to pay all of its vendors, such that it had to "prioritize" payment of some debts over others.[3]

In addition, Chemicar alleges that Finixa USA has overpaid UYL "for insurance and utilities" as well as "undelivered or unwarranted services or expenses," *id.* ¶ 45, but otherwise alleges nothing about the nature of the goods or services UYL provided, such as the value of or the amounts paid for such goods or services.

Finally, Chemicar alleges that after UYL was acquired by National Coatings & Supplies, Inc. ("NCS") in January 2024, Finixa USA entered into an amended

---

[3] Chemicar alleges that Finixa USA has failed to meet certain financial targets under the Shareholders Agreement, Countercls. ¶¶ 16–22, but alleges nothing about the Company's ability to pay its debts.

services agreement with NCS without Board approval. Countercls. ¶¶ 47–48. Chemicar alleges that Penney has "caused Finixa USA not to require NCS to abide by its obligations" or "enforce its rights" under that agreement but provides no additional detail about what obligations have been breached or what rights should be enforced. Compl. ¶ 59.

### E.    Procedural History

On April 11, 2025, Caerus initiated an action in this Court through the filing of a Verified Complaint (the "Caerus Complaint"), naming Chemicar, its controller EMM International BV ("EMM"), Piet Greeve, Dirk van Driessche, Carl Garcia, and Thomas van der Kooij as defendants, and Finixa USA as the nominal defendant. Verified Compl., C.A. No. 2025-0393-BWD Dkt. 1. On June 23, Chemicar filed the Counterclaims, alleging claims against Caerus for breach of the Shareholders Agreement and aiding and abetting breach of fiduciary duty. Countercls. ¶¶ 64–78.

On July 15, Chemicar initiated a second action through the filing of the Complaint, alleging claims against Finixa USA for breach of contract and "account stated," as well as claims against Penney for breach of fiduciary duty and breach of the Employment Agreement. Compl. ¶¶ 79–104.

7

Caerus moved to dismiss the Counterclaims and Penney moved to dismiss the Complaint (the "Motions to Dismiss").[4] The actions were consolidated,[5] and the Court heard oral argument on the Motions to Dismiss on February 11, 2026.

## II. ANALYSIS

Caerus and Penney have moved to dismiss under Court of Chancery Rule 12(b)(6) for failure to state a claim. When reviewing a motion to dismiss under Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-

---

[4] Caerus moved to dismiss the Counterclaims on July 14. Pl. and Countercl.-Def.'s Mot. to Dismiss, C.A. No. 2025-0393-BWD Dkt. 13. Caerus filed an opening brief in support of its motion to dismiss on August 13. Pl./Countercl. Def.'s Opening Br. in Supp. of its Mot. to Dismiss, C.A. No. 2025-0393-BWD Dkt. 16. Chemicar filed an answering brief in opposition to the motion to dismiss on September 12. Defs./Countercl. Pls.' Answering Br. in Opp'n to Pl./Countercl. Def. Mot. to Dismiss [hereinafter Countercls. AB], C.A. No. 2025-0393-BWD Dkt. 21. Caerus filed a reply brief in further support of its motion to dismiss on September 29. Pl./Countercl. Def.'s Reply Br. in Further Supp. of its Mot. to Dismiss, C.A. No. 2025-0393-BWD Dkt. 23.

Penney moved to dismiss the Complaint on August 6. Def. Mitch Penney's Mot. to Dismiss, C.A. No. 2025-0821-BWD Dkt. 7. Penney filed an opening brief in support of his motion to dismiss on September 9. Def. Mitch Penney's Opening Br. in Supp. of His Mot. to Dismiss, C.A. No. 2025-0821-BWD Dkt. 9. Chemicar filed an answering brief in opposition to the motion to dismiss on October 9. Chemicar Europe NV's Answering Br. in Opp'n to Mitch Penney's Mot. to Dismiss [hereinafter AB], C.A. No. 2025-0393-BWD Dkt. 25. Penney filed a reply brief in further support of his motion to dismiss on October 23. Def. Mitch Penney's Reply Br. in Further Supp. of His Mot. to Dismiss, C.A. No. 2025-0393-BWD Dkt. 27.

[5] C.A. No. 2025-0393-BWD Dkt. 20.

moving party." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)). Although the Court must draw reasonable inferences in the plaintiff's favor, it is "not required to accept every strained interpretation of [its] allegations." *Segway Inc. v. Cai*, 349 A.3d 628, 632 (Del. Ch. 2023) (quoting *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006)).

### A. Count III Of The Complaint (Breach Of Fiduciary Duty Against Penney) Is Dismissed.

Count III of the Complaint alleges direct and derivative claims for breach of fiduciary duty against Penney.[6] To state a claim for breach of fiduciary duty, a plaintiff must plead "(1) the existence of a fiduciary duty owed by the defendant to the plaintiff and (2) a breach of that duty." *Deane v. Maginn*, 2022 WL 16557974, at *13 (Del. Ch. Nov. 1, 2022), *aff'd*, 338 A.3d 1292 (Del. 2025) (TABLE).

As a director and officer of Finixa USA, a Delaware corporation, Penney owes fiduciary duties of care and loyalty to the corporation and its stockholders. *Gantler v. Stephens*, 965 A.2d 695, 708–09 (Del. 2009). The duty of care requires that "in making business decisions, directors must consider all material information reasonably available, [such] that the directors' process is actionable only if grossly

---

[6] Penney has not moved for dismissal on demand futility grounds, possibly because Section 4 of the Shareholders Agreement requires the approval of at least one Caerus-appointed director to pursue action against Penney. *See* Compl. ¶¶ 71–78.

negligent." *Brehm v. Eisner*, 746 A.2d 244, 259 (Del. 2000). "Gross negligence involves more than simple carelessness. To plead gross negligence, a plaintiff must allege 'conduct that constitutes reckless indifference or actions that are without the bounds of reason.'" *In re Baker Hughes Inc. Merger Litig.*, 2020 WL 6281427, at *15 (Del. Ch. Oct. 27, 2020) (quoting *Morrison v. Berry*, 2019 WL 7369431, at *22 (Del. Ch. Dec. 31, 2019)). "While the inquiry of whether the claims amount to gross negligence is necessarily fact-specific, the burden to plead gross negligence is a difficult one." *Id.* (quoting *Zucker v. Hassell*, 2016 WL 7011351, at *7 (Del. Ch. Nov. 30, 2016)).

The duty of loyalty "guards against self-dealing, conflicted transactions, and bad faith conduct." *Brola ex rel. Credit Glory Inc. v. Lundgren*, 2025 WL 3439671, at *4 (Del. Ch. Dec. 1, 2025). "Bad faith comprises both '[f]iduciary conduct motivated by an actual intent to do harm' and 'intentional dereliction of duty.'" *Id.* (alteration in original) (quoting *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 64, 66 (Del. 2006)). To plead bad faith, a plaintiff must allege "an extreme set of facts to establish that disinterested directors were intentionally disregarding their duties" or "that the decision under attack is so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith." *In re MeadWestvaco S'holders Litig.*, 168 A.3d 675, 684 (Del. Ch. 2017) (citations omitted). This, too, "is a difficult standard to meet." *Id.*

The Complaint alleges that Penney breached his fiduciary duties in five ways. First, the Complaint alleges that Penney has attempted to exert "leverage" over Chemicar by "[w]ithholding detailed month[ly] reports, financial and operational information from Finixa USA's Board and from Chemicar." Compl. ¶¶ 35–36, 97; *see also id.* ¶ 32 ("Despite repeated requests . . . Penney failed to provide the required monthly reports since at least February 2025 . . . ."). A conclusory assertion that Penney failed to circulate certain reports—with no pled facts identifying a single instance in which Penney received an information request and refused to comply— does not support an inference of "reckless indifference" "without the bounds of reason" necessary to state a claim for breach of the duty of care. Nor is Chemicar's invocation of the word "leverage" sufficient to transform an otherwise conclusory allegation into a viable loyalty claim. "Although Delaware has a notice pleading standard, that standard does not totally relieve a plaintiff of the burden to plead facts, not conclusions." *Harbor Finance P'rs v. Huizenga*, 751 A.2d 879, 893 (Del. 1999). The Complaint does not contain well pleaded allegations of fact to support an inference that Penney withheld information to advance his personal interests or to harm the Company.

Second, the Complaint alleges that Penney breached his fiduciary duties by "[d]enying members of Finixa USA's Board and Chemicar access to Finixa USA's books and records." Compl. ¶ 97; *see also id.* ¶ 4 (alleging Penney "denied Chemicar

11

access to the Company's books and records"); *id.* ¶ 35 ("Penney has refused to provide access to . . . the Company's books and records . . . ."). This theory, too, relies on conclusions rather than pled facts, as the Complaint fails to plead a single instance in which Chemicar requested books and records and Penney caused the corporation to deny its request. Indeed, the Complaint does not allege if or when Chemicar ever made a demand for books and records; facts supporting an inference that any such demand complied with the form and manner requirements of 8 *Del. C.* § 220; or how, if at all, Penney responded to any such demand. A bare allegation that a fiduciary "refused" to produce books and records, with no other factual allegations in support, does not state a claim for breach of fiduciary duty.

Third, the Complaint alleges that Penney "engaged in self-dealing conduct and breached his fiduciary duties by . . . prioritizing payments to UYL . . . while Chemicar's invoices went unpaid." Compl. ¶ 5; *see also id.* ¶¶ 46, 97 (alleging Penney prioritized "payments to entities in which he or his family had financial interests"). At the threshold, Chemicar's allegation that Penney caused Finixa USA to "prioritiz[e]" payments among vendors is unsupported by any pled facts suggesting that Finixa USA has or had insufficient funds to pay all of its vendors, such that it had to favor payment of some debts over others.

Looking past the conclusory rhetoric about "prioritization," Chemicar's challenge is twofold: Finixa USA failed to pay Chemicar's invoices, and Penney

caused Finixa USA to pay a third party in which Penney had a personal financial interest. The former allegation states a contract claim against the corporation, not a claim for breach of fiduciary duty against Penney. The latter supports, at most, an inference that Penney caused the Company to engage in an interested transaction. That is insufficient, standing alone, to state a claim for breach of the duty of loyalty. An interested transaction may warrant more exacting review under the entire fairness standard, but "[e]ntire fairness is not . . . a free pass to trial." *In re Hennessy Cap. Acq. Corp. IV S'holder Litig.*, 318 A.3d 306, 319 (Del. Ch. 2024), *aff'd*, 337 A.3d 1214 (Del. 2024). "Delaware law is clear that even where . . . entire fairness review is in play . . . [the] plaintiff must make factual allegations about the transaction in the complaint that demonstrate the absence of fairness." *Monroe Cty. Empls.' Ret. Sys. v. Carlson*, 2010 WL 2376890, at \*2 (Del. Ch. June 7, 2010). The Complaint here alleges nothing about the nature of the goods or services UYL provided, including the value of or amounts paid for such goods or services—it alleges only that Finixa USA "overpaid" UYL "for insurance and utilities" and "unwarranted services or expenses." Countercls. ¶ 45. Such conclusory allegations fail to support a reasonable inference that Penney caused Finixa USA to engage in an unfair transaction in breach of his duty of loyalty.

Relatedly, the Complaint alleges that Penney breached his fiduciary duties by causing Finixa USA to enter into an amended services agreement with NCS without

13

Board approval and by "caus[ing] Finixa USA not to require NCS to abide by its obligations" or "enforce its rights" under that agreement. Compl. ¶¶ 59, 97. Again, the Complaint does not contain any analysis of the agreement at issue (such as facts supporting the materiality thereof), nor any explanation of what obligations were breached and what rights were not enforced.

Finally, read charitably, the Complaint could be construed to allege that Penney breached his duty of care by "focus[ing] on selling Finixa products to a single buying group with a limited customer base." Compl. ¶ 29. The Complaint does nothing more than allege that Penney focused his managerial efforts on a specific group of customers. While Chemicar may disagree with that business decision, this does not support an inference of "reckless indifference" "without the bounds of reason" necessary to state a claim for breach of the duty of care.[7]

Accordingly, Count III of the Complaint is dismissed.

### B. Count IV Of The Complaint (Breach Of Contract Against Penney) Is Dismissed.

Count IV of the Complaint alleges a derivative claim for breach of contract against Penney. Count IV alleges that Penney breached his Employment Agreement

---

[7] Penney argues that to the extent the Complaint alleges that he breached his duty of care in his capacity as a director of Finixa USA, he is entitled to exculpation from monetary liability under an exculpation provision in the Company's certificate of incorporation adopted pursuant to 8 *Del. C.* § 102(b)(7). Because the Complaint fails to state a claim in any event, the Court does not reach this argument.

14

by "failing to provide required reports to the Board" and "preventing the Board and Chemicar from having access to Finixa USA's CRM database." Compl. ¶¶ 101–02.

"Under Delaware law, to recover for breach of contract, a plaintiff must well plead and then prove 'a contractual obligation, whether express or implied, a breach of that obligation by the defendant, and resulting damage to the plaintiff.'" *Erisman v. Zaitsev*, 2021 WL 6134034, at *8 (Del. Ch. Dec. 29, 2021) (quoting *Moore Bus. Forms, Inc. v. Cordant Hldgs. Corp.*, 1995 WL 662685, at *7 (Del. Ch. Nov. 2, 1995)).

Even assuming Chemicar has adequately alleged that Penney breached a contractual obligation to provide certain information to the Board, it "ha[s] utterly failed to plead that [Chemicar or the Company] ha[s] suffered cognizable harm from any breach, much less what that harm might be." *Erisman*, 2021 WL 6134034, at *11. Chemicar seeks only monetary damages, not equitable relief, yet offers no theory whatsoever as to how Penney's purported failure to provide information to the Board or Chemicar resulted in compensable harm. Instead, citing *Garfield ex rel. ODP Corp. v. Allen*, 277 A.3d 296 (Del. Ch. 2022), Chemicar insists that it is not required to plead *any* theory of harm because an "unexcused failure to perform a contract is a legal wrong, and therefore an action will exist even if it causes no injury." AB at 14.

15

I do not understand established Delaware precedent to excuse a plaintiff from pleading facts supporting every element of a claim for breach of contract, including that a contractual breach caused some harm. Indeed, *Garfield* acknowledges that binding Delaware Supreme Court authority requires a plaintiff alleging a claim for breach of contract to allege "the resultant damage to the plaintiff." *Garfield*, 277 A.3d at 328 (quoting *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)). *See, e.g.*, *Erisman*, 2021 WL 6134034, at *11 (dismissing claim for breach of contract where plaintiffs "utterly failed to plead that they have suffered cognizable harm from any breach, much less what that harm might be"); *UtiliSave, LLC v. Miele*, 2015 WL 5458960, at *10 (Del. Ch. Sep. 17, 2015) (sustaining a claim for specific performance of a contractual confidentiality obligation, but dismissing a claim for "compensatory damages" arising from a breach of the same obligation because the plaintiff failed "to plead facts supporting a reasonable inference that [the defendant's] breach caused the [plaintiff] economic harm"); *Kuroda v. SPJS Hldgs.*, 971 A.2d 872, 883 (Del. Ch. 2009) (dismissing a claim for breach of contract where the plaintiff "failed to properly allege the essential element of damages"); *Great Lakes Chem. Corp. v. Pharmacia Corp.*, 788 A.2d 544, 549 (Del. Ch. 2001) (dismissing a claim for breach of contract because the plaintiff did "not sufficiently ple[a]d that it suffered a cognizable injury resulting from the breach" and "[a]n essential element of any claim for breach of contract is cognizable injury"); *see also*

16

*Wellgistics, LLC v. Welgo, Inc.*, 2024 WL 113967, at \*4, \*6 (Del. Super. Ct. Jan. 9, 2024) (dismissing claim for breach of contract for "fail[ing] to meet Delaware's minimal notice pleading" requirement to allege cognizable harm, explaining that "[c]onclusory allegations of damages are insufficient"); *Light Years Ahead, Inc. v. Valve Acq., LLC*, 2021 WL 6068215, at \*6 (Del. Super. Ct. Dec. 22, 2021) (dismissing claim for breach of contract where the plaintiff "fail[ed] to sufficiently plead resultant damages").

It is true that a party seeking *equitable* relief need not allege *quantifiable* harm. *See Garfield*, 277 A.3d at 328 ("[E]ven if it is not clear that the non-breaching party has 'suffer[ed] immediate quantifiable harm, the equitable powers of this Court afford [it] broad discretion in fashioning appropriate relief.'" (quoting *Universal Studios Inc. v. Viacom Inc.*, 705 A.2d 579, 583 (Del. Ch. 1997))); *Universal Studios Inc.*, 705 A.2d at 583 (explaining that "when the parties' agreements have been breached but neither the innocent party nor the venture suffers immediate quantifiable harm," the Court can still award equitable relief).  And it is also true that after trial, nominal damages may be awarded to a plaintiff who failed to prove a loss or where recovery for a loss is precluded because damages were not proven with reasonable certainty.  *See* Restatement (Second) of Contracts § 346(b).  But the possibility of a post-trial nominal award for an empty victory does not excuse a

17

plaintiff seeking only money damages from alleging *some* theory of compensable loss at the pleadings stage.

Here, Chemicar does not seek equitable relief (or even a declaratory judgment), and the Complaint makes no attempt whatsoever to plead any theory of compensable harm. As a result, Count IV must be dismissed.

### C. Count I Of The Counterclaims (Breach Of Contract Against Caerus) Is Dismissed.

Count I of the Counterclaims alleges a claim for breach of contract against Caerus. Specifically, Count I alleges that Caerus breached Sections 4(B)(5), 11, and 4(C)(2)(b) of the Shareholders Agreement. Countercls. ¶ 68.

"'[Because] [t]he construction of a contract is a question of law,' it is well understood that 'a motion to dismiss is a proper framework for determining the meaning of contract language.'" *Erisman*, 2021 WL 6134034, at *8 (alterations in original) (citations omitted). "Accordingly, when assessing whether the contract claims survive [a pleadings-stage motion], it is appropriate to begin with a construction of the contracts alleged to have been breached by employing well-worn canons of contract construction." *Id.* at *8. Each of Chemicar's theories of breach here fails on the plain language of the contract and the insufficiency of the factual allegations pled in the Counterclaims.

First, the Counterclaims allege that Caerus failed "to cause [Penney] to provide detailed monthly reports to the Board as required under Section 4(B)(5)" of the Shareholders Agreement. Countercls. ¶ 68(a). Section 4(B)(5) states:

> ***The Shareholders shall cause the Board*** to require and demand that the Chief Executive Officer provides the Board with detailed monthly reports regarding the operations of the Company within two (2) weeks of the end of the preceding month.

Agt. § 4(B)(5) (emphasis added). By its plain language, Section 4(B)(5) imposes a joint obligation on the "Shareholders"—in other words, both Caerus and Chemicar—to cause the Board to "require and demand" that Penney provide the referenced reports. The Counterclaims do not allege that Caerus failed to cause the *Board* to act; they allege that "Penney has provided few, if any, such reports" and "Caerus has failed to demand or cause Penney to provide the required reports." Countercls. ¶ 23. Moreover, the Counterclaims plead no facts from which the Court can infer that *Caerus*, rather than Chemicar, caused any such failure—again, Caerus and Chemicar are entitled to equal Board representation under the Shareholders Agreement. Therefore, the Counterclaims fail to state a claim for breach of Section 4(B)(5).

Second, the Counterclaims allege that Caerus has withheld "full access to [Finixa USA's] books and records in violation of Section 11" of the Shareholders Agreement. Section 11 states:

19

> ***Each Shareholder shall be entitled*** to full and complete information
> with respect to the operation of the Company and all of its books and
> records including, but not limited to, regular online access to CRM,
> accounting, finance and reporting materials.

Agt. § 11 (emphasis added).  While the plain language of Section 11 grants "[e]ach

Shareholder" (*i.e.*, Caerus and Chemicar) a right to access the Company's books and

records, it does not impose an obligation on either Caerus or Chemicar to provide

such access.  This is unsurprising because the Company, through its directors and

officers, controls the books and records; the stockholders do not.[8]

Third, the Counterclaims allege that Caerus breached Section 4(C)(2)(b),

which states:

> The following actions shall require the approval of the majority of the
> Board consisting of at least one (1) Chemicar Director and one
> (1) Caerus Director: . . .
>
> b. making overall policy decisions with respect to the business and
> affairs of [Finixa USA][.]

Agt. § 4(C)(2)(b).  Chemicar alleges that Caerus breached this provision by causing

or directing Finixa USA to make a "policy decision" to prioritize payment to other

---

[8] Chemicar argues that the Court should infer an obligation on Caerus to produce books and records in Section 11 because "[a] contractual right without a corresponding obligation is illusory."  Countercls. AB at 15.  If Section 11 can reasonably be read to impose an obligation to produce books and records, it must impose it on Finixa USA, which is also a party to the Shareholders Agreement.  Chemicar also argues that it "bargained for § 11 knowing that Caerus would be in control of the information to which Chemicar would have access[,]" *id.* at 16, but under the Shareholders Agreement, Chemicar and Caerus were entitled to equal representation on the Board.

vendors over Chemicar. Countercls. ¶¶ 39, 68(d). Even assuming Section 4(C)(2)(b) imposes an obligation on Caerus, this claim fails because, as explained above, the Counterclaims do not plead facts supporting an inference that Finixa USA had insufficient funds to pay all of its vendors, such that it "prioritized" payment of some debts over others. *See* pp. 6, 12, *supra*. Nor do they plead facts supporting an inference that Caerus caused Finixa USA to make a "policy decision." At most, the Counterclaims allege that at some unspecified time, Finixa USA failed to pay Chemicar's invoices but did pay UYL's. Those allegations do not support an inference that Finixa USA adopted a "policy" or that Caerus played any role in doing so.

Fourth, the Counterclaims allege that Caerus "caus[ed] or permit[ed] Finixa USA to enter into agreements . . . with UYL and NCS[] without required approval by the Finixa USA board," Countercls. ¶ 68(e), but fail to identify which provision of the Shareholders Agreement was purportedly breached. It is possible that the Counterclaims intend to allege a breach of Section 4(C)(2)(o), which requires Board approval before "entering into or amending any contracts, arrangements or agreements with any Affiliates of any Shareholder." Agt. § 4(C)(2)(o). The Counterclaims identify two agreements between Finixa USA and Caerus—an initial Services Agreement dated April 21, 2021, and an Amended and Restated Services Agreement dated some time after January 16, 2024. Countercls. ¶¶ 42–44, 47–48,

21

68(e). The first Services Agreement could not have breached the Shareholders Agreement because the Shareholders Agreement was not signed until April 27, 2021, six days after the Services Agreement. *Id.* ¶¶ 3, 15. As for the Amended and Restated Services Agreement, the Counterclaims fail to plead facts supporting an inference that UYL was an "Affiliate" of Caerus when that agreement was signed. The Shareholders Agreement defines an "Affiliate" to mean,

> with reference to any Person, any other Person of which such Person is a shareholder, member, director, trustee, officer, general partner or employee, or any other Person directly or indirectly controlling or controlled by, or under direct or indirect common control with, such Person.

Agt. § 1(B). The Counterclaims allege that Penney, Hoang, or their family members owned an unspecified "financial interest" in UYL, Hoang "was an owner and executive of UYL[,]" and UYL and Caerus shared an address, until NCS acquired UYL on January 16, 2024. Countercls. ¶¶ 10, 35. The Counterclaims do not allege any facts supporting an inference that Caerus and UYL were under "common control" after that date, including at the time the Amended and Restated Services Agreement was signed.[9] As a result, the Counterclaims fail to state a claim for breach of Section 4(C)(2)(o).

---

[9] To the extent the Counterclaims allege that Caerus and Penney "allowed UYL to breach the services agreement with Finixa USA, including by failing to provide Finixa USA with required insurance coverage," they fail to allege any facts supporting the conclusion that Caerus or Penney "allowed" a breach. Countercls. ¶ 46.

22

For the reasons explained above, Count I is dismissed.

**D.     Count II Of The Counterclaims (Aiding and Abetting Breach Of Fiduciary Duty Against Caerus) Is Dismissed.**

Count II of the Counterclaims alleges a claim for aiding and abetting breach of fiduciary duty against Caerus.

To state a claim for aiding and abetting breach of fiduciary duty, a plaintiff must allege: "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, . . . (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach." *In re Mindbody, Inc., S'holder Litig.*, 332 A.3d 349, 389 (Del. 2024) (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001)). "[P]articipation in an aiding and abetting claim requires that the aider and abettor provide 'substantial assistance' to the primary violator." *Id.* at 392. "[F]actors that shed light on whether a secondary actor has substantially assisted the primary actor in its wrongful conduct" include:

- The nature of the tortious act that the secondary actor participated in or encouraged, including its severity, the clarity of the violation, the extent of the consequences and the secondary actor's knowledge of these aspects;

- The amount, kind, and duration of assistance given, including how directly involved the secondary actor was in the primary actor's conduct;

- The nature of the relationship between the secondary and primary actors; and

- The secondary actor's state of mind.

23

*In re Columbia Pipeline Gp., Inc. Merger Litig.*, 342 A.3d 324, 358 (Del. 2025) (citing *Mindbody*, 332 A.3d at 395–96). "[C]ase law in the corporate governance context has found liability only where there has been overt participation such as active 'attempts to create or exploit conflicts of interest in the board' or an overt conspiracy or agreement between the buyer and the board . . . ." *Mindbody*, 332 A.3d at 393 (quoting *Malpiede*, 780 A.2d at 1097).

As set forth above, Chemicar has failed to state a predicate claim for breach of fiduciary duty, which disposes of the aiding and abetting claim.

Additionally, the Counterclaims fail to adequately allege "knowing participation" in a fiduciary breach. The Counterclaims allege that "Caerus knowingly participated in and substantially assisted Penney's breaches" of fiduciary duty by (1) "[*a*]*ssisting* Penney's breaches of the Company's governance obligations and failing to direct Penney to comply with the Company's governance obligations," (2) "[*a*]*ssisting* Penney's failure to pay Chemicar invoices and diversion of Company funds to UYL at Chemicar's expense and failing to stop Penney from doing so," and (3) "[*a*]*ssisting* Penney's refusal to provide Chemicar with access to the Company's financial and operational information and failing to direct Penney to grant Chemicar access to financial and operational information." Countercls. ¶ 76(a)–(c). A rote allegation that a party has "assist[ed]" in a fiduciary breach does not come close to pleading "knowing participation."

24

Chemicar argues that Penney's knowledge and conduct may be "imputed" to Caerus for purposes of its aiding and abetting claim. Countercls. AB at 20–21. "To be sure, knowledge can be imputed from a human to an entity in certain scenarios[,]" "[b]ut action by the entity must be pled to state a claim against the entity." *Renovaro Inc. v. Gumrukcu*, 2025 WL 3134533, at \*11 n.136 (Del. Ch. Nov. 7, 2025); *see also Hennessy Cap.*, 318 A.3d at 329 (requiring distinct allegations of active participation by an alleged aider-and-abettor). Here, the only action Caerus is alleged to have taken is "assist[ance]." Such allegations are far too conclusory to support an inference of participation.

Because the Counterclaims fail to allege *any* facts supporting an inference that Caerus substantially assisted a breach of fiduciary duty, Count II must be dismissed.

### E. Chemicar's Request For Leave To Amend Is Denied.

Chemicar argues that, "[a]t a [m]inimum[,]" "dismissal should be without prejudice and with leave to amend the Complaint." AB at 26; Countercls. AB at 24. Chemicar's request for leave to amend is denied. Under Court of Chancery Rule 15(a)(5)(A),

> If a party wishes to amend the party's complaint in response to a motion to dismiss under Rules 12(b)(6) or 23.1, the party must amend the party's complaint—or seek leave to amend—either:
>
> > (i) before the party's response to the motion is due; or

25

(ii) if the case has been transferred from another court, within 30 days after the transfer, even if the party responded to the motion in the other court.

Ct. Ch. R. 15(a)(5)(a). "If a party neither amends nor moves to amend by the time set forth in Rule 15(a)(5)(A), a dismissal under Rule 12(b)(6) or 23.1 will be with prejudice . . . unless the Court for good cause shown dismisses the complaint without prejudice." Ct. Ch. R. 15(a)(5)(B).

When Caerus and Penney moved to dismiss, Chemicar elected to stand on its pleadings and file an answering brief rather than amend. Chemicar has not demonstrated that good cause exists to depart from Rule 15(a)(5)(A). Chemicar's request for leave to amend is therefore denied and dismissal is with prejudice.

## III. CONCLUSION

For the reasons explained above, the Motions to Dismiss are granted. Counts III and IV of the Complaint and Counts I and II of the Counterclaims are dismissed.